Mr. Justice Gantt
delivered the opinion of the Court.
By the 2d branch of the 4th section of the statute of Frauds, it is enacted, “ that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriages of another person; unless the agreement upon which such action ••■hall be brought, or some memorandum.or note .thereof, *103 shall be in writing, and signed by the party to be charged therewith; or some other person thereunto by him lawfully authorized.”
The defendant relies upon this clause in the statute, as a shield against' the present demand. He insists that the plaintiff ought to produce a note in writing of this promise, as it was to pay the account of another.
It is answered,on the other side by saying that the credit was originally given to the defendant. And it certainly depends upon the insulat.d fact whether Leonard,, the person to whom the goods were delivered, was or was not made a debtor for them? If he was so debited, the alleged promise would be a collateral undertaking, and to all intents and purposes void by the statute. Leonard is certainly made a debtor in the plaintiff’s books for those goods ; and the letter of the plaintiff unequivocally admits that Leonard was credited upon the defendant’s becoming. responsible.
The only evidence furnished of such responsibility however is the memorandum made by the plaintiff in the margin of the book where Leonard is charged with the goods. This memorandum, so strongly relied on by the plaintiff, does of itself admit the fact that the credit was given to Leonard, upon the defendant’s becoming responsible. The plain and obvious interpretation of which is, that if Leonard did not pay, defendant was to pay.it for him.
Now admit that a memorandum of this kind was to have the effect contended for ; is it not seen at once that this branch of the statute would become a dead letter, and that the statute might in every instance be defeated by the mere act of the party concerned in interest? A party might do that for himself which no number of witnesses could establish in his behalf. ■
The law of the case therefore is, that if Leonard was originally liable to be sued for the goods delivered for his use, then the promise of the defendant, if ever made, would be a collateral undertaking, and void.
Now, it is clear that Leonard was a debtor, and mighf *104 have been sued. If no credit was given to him, it may be. asked, why was the book camben d with an entry making him debtor i Why was not Creyón at once charged with the goods i The only correct answer is, that at most the plaintiff considered the defendant as collaterally responsible. Leonard was resorted to by the plaintiff as the debtor. Every exertion was made to obtain the debt from him, A part was secured. And it was only after all hope had vanished of gating the balance from him, that the defendant was called on.
One of the leading cases upon this branch of the statute is that of Buckmyer vs. Darnall, reported in Lord Daymond, 1085. In that case, the plaintiff declared that the defendant, in consideration that the plaintiff, at the request of the defendant, would lei to hire and deliver to one Joseph English, a gelding of the plaintiff’s, undertook and promised the plaintiff that the said English would deliver the said gelding to the plaintiff. It was insisted in that •case for the defendant, as was done here, that the plaintiff ought to produce anote in writing of this promise within the statute of frauds. The case was one of doubt. Holt, C. J. Gould and Powell, Justices, were at first of opinion that the case was not within the statute, because they tho’t that English was not liable upon the contract. Mr. Justice Powys, differed. The Chief Justice and his associates in opinion agreed, that if an)- trust was given to English, then the case would be within the statute, but they thought that no credit had been given to him. The case was more deliberately considered. The Chief justice advised with the Judges of the Court of King’s Bench, and it was finally determined that as English might have been charged on the bailment in detinue on the original delivery, the promise made by the defendant was collateral, and within the reason and words of the statute. Mr. Justice Holt, in delivering the opinion of the .Court, puts this case, a case strictly analogous to the one before us. “ Suppose a man comes with another to a shop to buy, and the shop-keeper should say, I will not sell him the goods unless you will under *105 take he shall pay me for them; such a- promise is within, the statute.”
I say the Cases are strictly analogous, so far as can be judged of them from the book entries, and the conduct pursued by the plaintiff. What was really said to Creyón does not appear by the evidence ; but by no correct construction of the circumstances, can his responsibility be extended beyond the case put by Chief Justice Holt.
In Matson vs. Wharam, 2 Term. Rep. 81, the line as laid down by Judge Bidler, must be considered as the correct one ; which is, that if the person for whose use goods are furnished, be liable at all any promise by a third person to pay that debt must be in writing, otherwise it is void by the statute. The same rule is recognized in Jones vs. Cooper, (Cowper, 227, and Appendix, No. 6.) That Leonard might have been sued, is unquestionable ; consequently Creyón1 s promise, if made, was within the statute.
No statute has been so much, and, in my opinion, so justly eulogized for its wisdom as the statute of Frauds. This branch of it tends to repress evil practices which would otherwise spring up to the insecurity of all. But for the salutary influence of this statute, thousands would tumble into ruin by having their estates taken from them to answer for the ■ debts, defaults, and miscarriages of others. So far therefore from believing that this branch of the statute of Frauds has a tendency to produce injustice and wrong, I think it the only bulwark of security to shield men from those evils which the statute was intended to remedy. Whether this was a case within the statute, and'required that the promise should he in writing to support it,, was a question of law. (See the case of Kent vs. Hutchinson, 3 Bos. and Pull. 232.) The Court are clearly of opinion that to make the defendant responsible in this case, the promise should have been in writing ; and no such evidence having been adduced on the trial, the presiding judge should have granted the ,non-suit which was claimed, It is the opinion of the Court that *106 fcbe postea should be delivered to the defendant, with leave to enter up judgment of nonsuit in the case.
Justices Richardson, Nott, and Huger, concurred.